

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NORTHERN DISTRICT OF TEXAS
FILED

DEC 2 3 2004

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

| | | |
|---|---|---|
| ANNA SALINAS, on her behalf and on behalf of those similarly situated, | § § § | |
| Plaintiff, | § § | Civil Action No. 3:04-CV-1861-B |
| v. | § § | |
| O'REILLY AUTOMOTIVE, INC., | § § | |
| Defendant. | § § | |

**DEFENDANT'S BRIEF IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

BAKER BOTTS L.L.P.

Teresa S. Valderrama
State Bar No. 20422500
Kathryn S. Vaughn
State Bar No. 00785144
One Shell Plaza
910 Louisiana
Houston, Texas 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

LUTTRELL & WILLIAMS, P.C.

John M. Williams
State Bar No. 21554200
L. Don Luttrell
State Bar No. 12708630
3000 Weslayan, Suite 350
Houston, Texas 77027
Telephone: (713) 877-1077
Facsimile: (713) 877-1089

ATTORNEYS FOR DEFENDANT
O'REILLY AUTOMOTIVE, INC.

OF COUNSEL:
Eric Senske
State Bar No. 18027100
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, TX 75201
(214) 753.6500 (Telephone)
(214) 753.6503 (Fax)

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION ............................................................................................................ 1

II.     FACTS ............................................................................................................................. 2

      A.    Plaintiff's Pleadings and Disclosures About Her Collective Action Claims .......... 2

      B.    Plaintiff's Testimony .............................................................................................. 3

            1.    Plaintiff's Various Work Locations at O'Reilly ......................................... 3

            2.    No Unpaid "Regular" Pay Except Eight Hours from Final Paycheck ........ 3

            3.    Failure to Pay Overtime Hours Alleged Only at Mansfield Store .............. 4

            4.    Overtime Pay Problem at Mansfield Alleged Only as to Ronnie Everage . 4

            5.    Plaintiff's Testimony Establishes that No Systemic Overtime Pay Issue Exists ........................................................................................................... 6

            6.    Plaintiff's Overtime Claims even Against Ronnie Everage Are Limited to Factual Circumstances Unique to Plaintiff .................................................. 7

      C.    Other Evidence:  Team Members Who Worked with Plaintiff ............................ 10

III.    DISCUSSION AND AUTHORITIES ........................................................................... 11

      A.    Summary Judgment Standard ............................................................................... 11

      B.    Salinas Has Not Established by Competent Evidence that a Class of Similarly-Situated Plaintiffs Exists. ................................................................................... 12

            1.    Salinas Fails to Meet Either of the Fifth Circuit Tests for Collective Action Certification. ............................................................................................... 14

IV.     CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ..................................................................................12

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ..................................................................................11

*H & R Block Ltd. v. Housden,*
  186 F.R.D. 399 (E.D. Tex. 1999) ....................................................13, 14, 15

*Hall v. Burk,* No. Civ. 301CV2487H,
  2002 WL 413901 (N.D. Tex. Mar. 11, 2002) ...............................14, 15

*Hoffman-La Roche Inc. v. Sperling,*
  493 U.S. 165 (1989) ..................................................................................13

*Little v. Liquid Air Corp.,*
  37 F.3d 1069 (5th Cir. 1994) ...................................................................12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ..................................................................................12

*Mooney v. Aramco Servs. Co.,*
  54 F.3d 1207 (5th Cir. 1995) .......................................................13, 14, 15

*Shushan v. Univ. of Colo. at Boulder,*
  132 F.R.D. 263 (D. Colo. 1990) ...............................................................14

*State Farm Life Ins. Co. v. Gutterman,*
  896 F.2d 116 (5th Cir. 1990) ...................................................................12

## STATUTES

Fed. R. Civ. P. 56..................................................................................................11

29 U.S.C. § 216(b) (2000) ...................................................................................12

Defendant O'Reilly Automotive, Inc. ("O'Reilly") files this Brief in Support of its Motion for Partial Summary Judgment to Resolve Collective Action Issues.

## I.    INTRODUCTION

Plaintiff Anna Salinas ("Plaintiff") purports to head a nationwide collective action lawsuit against O'Reilly based upon the sparse allegation, set forth in her Original Complaint, that O'Reilly required its hourly-paid employees to work "off the clock." Plaintiff provides nothing more: no facts, no analysis, no explanation of the "off-the-clock" work about which she complains. Similarly, Salinas' disclosures, discovery and pleadings provide no meat to flesh out this barest of bare bones allegations.

O'Reilly deposed Plaintiff on December 9, 2004. Plaintiff's testimony convincingly establishes that her conflict with O'Reilly is a local dispute involving one O'Reilly store, one O'Reilly store manager, and certain factual circumstances that are unique to Plaintiff herself. Certainly and significantly, Plaintiffs' testimony clearly reflects that she is not representative of other current or former O'Reilly employees given the localized and particularized nature of her allegations.

Regardless of the merit of Plaintiff's personal, local dispute over alleged unpaid "off the clock" work (allegations that O'Reilly wholly denies), Plaintiff now has testified to facts that lead to a single result: Her dispute with O'Reilly involves unique, personalized issues that concern only *one* manager in *one* of O'Reilly's 1,222 stores. To that end, Plaintiff's claims do not establish any basis in law or in fact for the collective action she continues to urge.

Because Plaintiff cannot meet her burden to show that she is similarly situated to others in a putative, nationwide, collective action class of hourly-paid employees, and indeed her testimony is to the contrary, the collective action aspect of her lawsuit should be dismissed.

## II.    FACTS

**A.    Plaintiff's Pleadings and Disclosures About Her Collective Action Claims**

On August 26, 2004, Plaintiff Anna Salinas, a former O'Reilly employee, filed her Original Collective Action Complaint alleging that she and "similarly situated" O'Reilly employees were required to work "off the clock" in violation of the Fair Labor Standards Act ("FLSA"). (Complaint ¶ 3.) Although it turns out that Salinas' actual complaint, per her deposition testimony, is a purely local dispute with one of her former store managers, Plaintiff's counsel nonetheless issued nationally-circulated press releases touting her lawsuit as a nationwide collective action affecting 1,183 stores in 18 states and soliciting witnesses and additional plaintiffs. (App. 023-28 (Press Releases).)

Plaintiff's pleadings allege that the putative collective action participants "are those employees who are similarly situated to Plaintiff in that their relevant job duties and pay provisions were similar to Plaintiff." Apart from this bare-bones conclusion, the Complaint provides no factual support for or explanation of the basis for a collective action. (Complaint ¶ 3.)

After filing suit, Salinas served initial disclosures. These disclosures lacked any factual content to support the ostensible collective action. For example, they identify only Plaintiff, one opt-in, and the CEO of O'Reilly as persons with knowledge of relevant facts, notwithstanding the collective action allegation and allegations of others similarly situated. The required damages statement merely defers, providing no indication of the claim or how it is calculated. No documents supporting either the Plaintiff's claims or a collective action are identified.[1] (App. 029-33.)

---

[1] Subsequent disclosures by Plaintiff adopted information provided by O'Reilly's disclosures, identified the

Given the paucity of factual allegations in the Complaint and the initial disclosures, O'Reilly requested an explanation of the facts underlying Plaintiff's collective action claims to prepare its own initial disclosures,[2] which were required to be filed no later than November 1, 2004 per this Court's order. (App. 034.) Plaintiff did not respond. Ultimately, O'Reilly deposed Plaintiff on December 9, 2004, interested in learning about the basis for her claims of a nationwide collective action.

**B.    Plaintiff's Testimony**

Contrary to the sweeping contention of her Original Complaint and her press releases, Plaintiff really is suing over isolated, local grievances between herself and her local O'Reilly store manager at the time, Ronnie Everage ("Everage").

*1.    Plaintiff's Various Work Locations at O'Reilly*

Since Plaintiff first went to work for O'Reilly on December 20, 1999, (App. 036 (Dep. at 9)), until she quit on May 7, 2004 (App. 042 (Dep. at 35)), Plaintiff has worked at five O'Reilly store locations: Fort Worth (twice), Burleson, Mansfield (twice), Duncanville and Midlothian. (App. 036-39 (Dep. at 9-20).) Thus she has substantial experience with O'Reilly across these five store locations.

*2.    No Unpaid "Regular" Pay Except Eight Hours from Final Paycheck*

Plaintiff was paid for all regular (non-overtime) hours she worked at every store location except for eight hours she asserts were shorted from her last paycheck:

---

scattered persons who filed consents (as might be anticipated, in response to Plaintiff's advertisements about her "nationwide" lawsuit), listed certain former co-workers, identified local management as persons to whom Plaintiff had complained, and summarily stated a damages claim with no explanation of the methodology behind it. At deposition, Plaintiff confirmed that she didn't know how the damages claim was calculated or what it reflected. Ultimately, none of this information set out the factual basis for Plaintiff's purported collective action claims.

[2] O'Reilly requested such basic facts as "(1) who directed [Plaintiff and other opt-in plaintiffs] to work off the clock or otherwise had knowledge that they were doing so; (2) which O'Reilly policy or policies permitted or required them to work off the clock; (3) at which store (if they worked at more than one store) did they work off the clock; and (4) when and how often did the alleged unpaid work occur?" (App. 034.)

Q.    Okay.  Other than this eight hours of regular time that you are saying you didn't receive on your last paycheck that doesn't appear in your lawsuit, is there any other period or periods of time that you worked for O'Reilly that you are claiming you did not receive every hour of your regular pay?

A.    I got every hour.

Q.    So today we are only dealing with, in your allegation, eight hours of regular time you say you weren't paid and then whatever overtime we are going to discuss you claim you weren't paid?  Am I correct?

A.    Yes, sir.

(App. 041 (Dep. at 32-33) (objection omitted).)

### 3.    *Failure to Pay Overtime Hours Alleged Only at Mansfield Store*

Significantly, Plaintiff was paid for all overtime hours she worked except at one

O'Reilly store -- store number 771 in Mansfield:

Q.    All right.  In fact, it is my understanding in this case -- and correct me if I am wrong --

A.    Yes, sir.

Q.    -- this claim you are making where you are saying you are owed overtime hours that you were not paid, you are claiming all of that occurred at store 771, the Mansfield store.  Am I right on that?

A.    Yes, sir.

(App. 043 (Dep. at 40).)

### 4.    *Overtime Pay Problem at Mansfield Alleged Only as to Ronnie Everage*

Even at the Mansfield store, Plaintiff testified that store manager Everage was the

*only* store manager, of all those whom she had at the store, who did not pay her, and others, for

overtime hours:

Q.    Ms. Salinas, if I have heard you correctly today -- and I think I have but correct me if I misspeak, but it appears to me that the gist of what you are claiming here today as to overtime which you say that you worked and were not paid, you're -- you're claiming that it goes back to issues with Ronnie Everage in causing

you not to get paid that overtime. Is that what I have heard from you today?

A.     Yes, sir.

Q.     Okay. And the same thing for these other people that you have claimed that may or may not have overtime issues, it appears that you are also claiming their issues are tied to the manager, Ronnie Everage?

A.     Yes, sir.

Q.     I haven't heard you say it is someone else's fault other than issues they had with him. Am I correct on that?

A.     Yes, sir.

(App. 055 (Dep. at 200-01) (objection omitted).) In fact, while at the Mansfield store, before

Ronnie Everage became her store manager, Plaintiff recalled many other "good" store managers:

Q.     Okay. Did you ever work any overtime under Mr. Beale?

A.     I might have, and if I did I'm sure he paid it.

Q.     Okay. So as long as Mr. Beale was manager you are not claiming in this lawsuit you are owed for any overtime during any period of time Mr. Beale was there?

A.     Oh, no, sir.

Q.     Okay.

A.     *He was a good manager.*

(App. 045 (Dep. at 86) (emphasis added); *see also* App. 045 (Dep. at 87).)

Similarly, outside of the Mansfield store, Plaintiff was properly paid overtime by

store managers other than Ronnie Everage:

Q.     Okay. All right. And had you gotten along well [with] Mr. Carter when he was your manager?

A.     Yes, sir. *He was one of the best managers O'Reilly ever had.*

(App. 040 (Dep. at 26) (emphasis added).)

Q.     So is it your testimony here today that the entire time you worked with O'Reilly you never had a check that had overtime on it?

A.    No, sir.  When I first started out with O'Reilly's I got hired in by Dan Dowell.

Q.    Yes, ma'am.

A.    I think I started out at $8, 8.50.  I'm not sure.  Dan Dowell promised my [sic] five hours overtime a week for me driving so far.  That was fine.  I did it, did it, and did it for a while, and then all of a sudden it slacked off. That was fine.

When they could they would give me overtime, but that was under that store over there.  *That was good. It was all correct.*  I didn't have any problems with it.

(App. 043 (Dep. at 39) (emphasis added).)

Q.    So you are saying when you were at the Fort Worth store the two different times you worked there -- that is what you are talking about, right?

A.    Yes, sir.

Q.    You are saying all during that time period your checks were always correct?  Is that what you are saying?

A.    Yes, sir.  *They were good managers.  Whenever we signed for our checks they would ask us to look at our hours that was brought in, and if we had any questions we would ask the manager.  It was taken care of.*

Q.    You always got all your overtime, is what you are saying?

A.    Uh-huh.

Q.    You always got paid for it?

A.    Yes, sir.

(App. 043 (Dep. at 40) (emphasis added).)

5.    *Plaintiff's Testimony Establishes that No Systemic Overtime Pay Issue Exists*

Clearly, Plaintiff's overtime pay dispute arises not out of some systemic problem with O'Reilly's overtime pay policies and practices.  Four out of the five stores where Plaintiff worked had no problem whatsoever.  And within the one store where Plaintiff contends her problem with overtime pay arose, the problem related to only a single manager, Ronnie Everage.

The others were, for the most part, "good" managers and Plaintiff ordinarily was paid all she was due while working for them -- even at the Mansfield store.

Additionally, on at least one occasion, under store manager Lowrey, when Plaintiff objected that she had not been paid for eight hours of overtime she had worked, the district manager fixed the problem immediately. (App. 046, 051 (Dep. 94-95; 117).)

> ### 6.    Even Plaintiff's Overtime Claims Against Ronnie Everage Are Limited to Factual Circumstances Unique to Plaintiff

Finally, even as to the complaints Plaintiff did have while an O'Reilly team member -- *i.e.*, at the Mansfield Store while managed by Ronnie Everage -- the specific overtime pay claims that Plaintiff asserts remain unique to her personal circumstances. Plaintiff's claims concern factual circumstances that are not common to other hourly-paid team members who worked at the Mansfield Store under Ronnie Everage.

Plaintiff testified about four separate circumstances giving rise to her overtime pay claims against Ronnie Everage while working at the Mansfield store. They are as follows:

- On six occasions between January 2004 and April 2004, Plaintiff and another employee, Jacob Clay, were required to stay late to handle "tape backup" responsibilities, and Plaintiff alleges neither she nor Clay were paid overtime for this. (App. 044, 054 (Dep. at 74-75; 135-36).)

- Once, when Everage was on vacation with his wife in June or July of 2003, Plaintiff and another employee named Mike were instructed to report to work two hours early on a Saturday, and Plaintiff believes she and Mike were not paid for those two hours. (App. 051, 054 (Dep. at 115-16; 136).)

- On twenty or so occasions, Plaintiff came to work a half an hour before her scheduled start time and Everage would give her work to do in the store before her official start time. When she refused to do this unless he paid her for it, Everage told her she should leave and come back later, but not to be late for her shift. Plaintiff did not write her overtime on the schedule on these twenty occasions because Everage deliberately put the schedule where it was too high for her to reach without climbing on a desk, which she didn't want to do. (App. 052-53 (Dep. at 126-28; 131-33).)

- From April 2003 until Plaintiff quit on May 7, 2004, Plaintiff alleges she was singled out to work through lunch nearly every day without being paid overtime. (App. 050, 054 (Dep. at 112; 135-36).)

Each of these circumstances arises out of unique circumstances that apply solely to Plaintiff. None gives rise to a systemic violation of the FLSA that warrants or might support a collective action.

### a.    Six instances of assignment of "backup tape" responsibilities.

Clearly, the assignment of a once-a-month "tape backup" responsibility by Ronnie Everage, starting after January of 2004, is not a factual circumstance, pay policy, or pay practice that generally affects hourly-paid team members working under Ronnie Everage. (App. 044 (Dep. at 75).) The duties are limited and infrequent, depend on the discretion of Ronnie Everage and, frankly, to be similar to Plaintiff's circumstances, require the team member assigned to this task to fail to record the time worked on the work schedule, as Plaintiff indicated occurred with her because she couldn't reach the schedule without climbing on a table, which she was unwilling to do. (See, e.g., App. 053 (Dep. at 131).)

### b.    The single two-hour early report while Everage was on vacation.

Once again, the one instance of Everage's request to Plaintiff to come in early on a Saturday to receive certain shipments while Everage was on vacation is not a systemic problem at all. It is an allegation personal to Plaintiff, and is not susceptible of treatment as the basis for a collective action.

### c.    Twenty or so early reports to work and failure to log the time.

Plaintiff's allegation of voluntarily reporting early to work but not being paid is, again, a claim unique to her. It is not a systemic FLSA violation appropriate for a collective action. Here, Plaintiff chose to report to work early, and contends that she was given chores upon arriving early but did not write the time down. Her testimony that she ultimately refused to

begin work before her scheduled start time, and then was instructed to leave the store but to make sure she returned in time for her scheduled shift demonstrates that she was *not* required to work "off the clock" at all.

For purposes of a collective action, Plaintiff identified no other employees whom she contended experienced the same situation with store manager Ronnie Everage. Clearly, this issue is not suited to collective action treatment even with respect to co-workers within the Mansfield store who report to Ronnie Everage.

### d.    *Denial of overtime pay for lunch worked beginning April 2003.*

The issue of unpaid overtime for worked lunches is the most frequent FLSA violation Plaintiff alleges. However, Plaintiff's testimony unequivocally establishes that this issue is not appropriate for collective action treatment, either. Rather than a systemic issue, Plaintiff was "singled out" by Ronnie Everage and treated differently from her co-workers with respect to overtime pay for lunch breaks. Hence, none of them could be similarly-situated:

> Q.    But now you are saying there was just on occasion, here and there, that these other people you named did not take a lunch break, but you are saying [that] with you it went on for more than a year every day you worked?
>
> Q.    Am I correct on that?
>
> A.    Yes, sir.
>
> Q.    Okay. So you are saying you were singled out by your manager not to be allowed to go to lunch on a daily basis. That is what you are saying?
>
> A.    Yes, sir.
>
> Q.    Where other people in the store were not singled out?
>
> A.    Yes, sir.
>
> Q.    Is there any reason why you're alleging that to be the case?
>
> A.    I don't know what he had against me.

(App. 050 (Dep. at 111-12) (objections omitted); *see also id.* at 111.)



This behavior directed at Plaintiff is mysteriously alleged to have begun in April 2003, after Ronnie Everage came back from vacation. At that point in time, according to Plaintiff, Everage stopped letting her take a lunch and, instead, made her work through lunch. (App. 047-48 (Dep. at 100-02).) According to Plaintiff, after a couple of instances where Everage refused her the opportunity for lunch, Plaintiff then just stayed on the job of her own volition and worked through lunch even if Everage had not instructed her to do so. (App. 049-50 (Dep. at 108-10).)

In sum, even this allegedly frequent denial of overtime pay appears to arise out of a personal issue between Plaintiff and Everage. Significantly, Plaintiff's testimony plainly establishes that this is not a systemic issue for collective action treatment, even among Plaintiff's co-worker team members in the Mansfield store who were under the supervision of Ronnie Everage.

**C.    Other Evidence:  Team Members Who Worked with Plaintiff**

The absence of evidence to support a collective action in this case, and the competent, compelling evidence foreclosing such an action, includes not only Plaintiff's own, unequivocal testimony as to the local, personal bases for her claims that renders them unsuitable as collective action issue. In further support of summary dismissal of this collective action are affidavits of Mansfield store employees who worked with Plaintiff and who experienced and observed none of the overtime violations that she alleges occurred. (App. 001-22.)

Store Manager Ronnie Everage denies that he ever asked Plaintiff or any other employee to work without pay, and that the procedure in Store 771 is for employees to work the time reflected on the posted schedule and to record the time actually worked if it varies from the schedule. (App. 003-04.) Plaintiff's co-worker team members observed none of the purported FLSA violations about which Plaintiff testified. (App. 001-22.) And while their testimony that

they did not perceive any improper directives or behavior by Ronnie Everage is not, at this time, offered to defeat Plaintiff's actual allegations that she is owed overtime, this testimony is substantial and compelling evidence that, whatever the reasons for Plaintiff's claims against Ronnie Everage, there is no systemic problem to be addressed by a collective action.

This collective action was unsupported by facts on the day it was filed. It was unsupported by facts in Plaintiff's disclosures. And it now is affirmatively defeated by Plaintiff's testimony, together with the affidavits of O'Reilly team members who testify that they experienced and witnessed none of the alleged FLSA violations over which Plaintiff sues.

The affidavits of Plaintiff's co-workers are particularly significant in a case like this one, where the "opt-in" plaintiffs who have filed consents, as far as O'Reilly can tell, have no connection whatsoever to Ronnie Everage -- who is specifically alleged by Plaintiff to be the reason for the overtime pay failures. Under these circumstances, the dearth of any information connecting the "opt-ins" to Plaintiff, together with Plaintiff's counsel's national advertising for potential plaintiffs that issued the day this suit was filed, warrants turning a skeptical eye toward this purported collective action. Taken together, the evidence in this case will bear only a single conclusion: Plaintiff's testimony and other evidence, together with the affidavits of Plaintiff's coworkers and the lack of any connection between the "opt-ins" and Ronnie Everage, demonstrate that a summary dismissal of the collective action claims in this lawsuit is proper.

## III.    DISCUSSION AND AUTHORITIES

### A.    Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[A] complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

Once the moving party identifies the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* at 586, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)); *see also State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990) (demanding "'significant probative evidence'" from the nonmoving party).

Pleadings, other unsubstantiated assertions or conclusory allegations will not suffice to defeat summary judgment. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Without such evidence, a court cannot "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." *Little*, 37 F.3d at 1076.

Plaintiff has not met this burden. On the contrary, the evidence all points affirmatively toward dismissal of the collective action allegations in this lawsuit.

**B.    Salinas Has Not Established by Competent Evidence that a Class of Similarly-Situated Plaintiffs Exists.**

The Fair Labor Standards Act ("FLSA") permits a plaintiff to maintain an action on "behalf of himself . . . and others similarly situated." 29 U.S.C. § 216(b) (2000). District courts have the discretion, in appropriate cases, to implement § 216(b) in FLSA actions by

regulating the notice, if any, sent to similarly-situated potential plaintiffs. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989). However, such court-facilitated notice is authorized *only* after the plaintiff has made a sufficient showing that a similarly-situated class exists. *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1212 (5th Cir. 1995). Although a court need not reach a conclusive determination with respect to whether a class of similarly-situated plaintiffs exists at this stage, there must be, *at a minimum,* evidence of such a potential class sufficiently developed at this time to allow court-facilitated notice. *See H & R Block Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D. Tex. 1999). Salinas must therefore submit competent evidence, not merely make unsupported allegations, that a group of similarly-situated plaintiffs exists to proceed with her collective action claims. *Id.* In light of Plaintiff's deposition testimony, she cannot make this showing. The evidence weighs convincingly against her.

Plaintiff apparently seeks a class of all hourly-paid employees at O'Reilly, corporate-wide. Here, Plaintiff has no probative evidence establishing a reasonable basis to conclude that the putative collective action class she articulates is "similarly situated." Salinas is not entitled, therefore, to pursue the collective action element of her claims in the instant case. *See id.* at 400-01. Specifically, Salinas must present substantial evidence that O'Reilly implemented a single decision, policy or plan that was intended to violate the FLSA by depriving Plaintiffs of overtime compensation. *Id.* at 400. Because she has not submitted any evidence of an overarching unlawful compensation decision, policy or plan to deny overtime to a defined group of workers, but instead, lays the blame for O'Reilly's FLSA violations at the hands of one store manager, Salinas' collective action claims must be dismissed as a matter of law.



1.    **Salinas Fails to Meet Either of the Fifth Circuit Tests for Collective Action Certification.**

The Fifth Circuit has not adopted one standard to be used in determining whether to allow opt-in notification under the FLSA. *Mooney*, 54 F.3d at 1213-16; *H & R Block*, 186 F.R.D. at 400.    Rather, the determination whether a court should exercise its discretion encompasses two tests, neither one of which carries more weight than the other. *Mooney*, 54 F.3d at 1216; *Hall v. Burk*, No. Civ. 301CV2487H, 2002 WL 413901, at *2 (N.D. Tex. Mar. 11, 2002).

a.    ***Spurious Class Action***

The first test for certification is a Rule 23 analysis.    It is a one-step method, although a defendant may always move to decertify.    This method derives from the so-called "spurious class action" procedure previously followed under Federal Rule of Civil Procedure 23. *Mooney*, 54 F.3d at 1214; *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263, 265 (D. Colo. 1990).    Under this test, the court looks to "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified as similarly-situated, since the statute does not define the term. *Mooney*, 54 F.3d at 1214; *Shushan*, 132 F.R.D. at 268.

Here, Plaintiff cannot make the necessary showing under this test.    Indeed, her testimony is that her claims are limited to the four items discussed at deposition and, additionally, are limited to issues idiosyncratic to her and to Ronnie Everage's conduct towards her at a single O'Reilly store. Because Plaintiff's testimony negates a factual showing regarding numerosity, commonality, typicality, and adequacy of representation, she fails the spurious class action test. *H & R Block*, 186 F.R.D. at 400-01; *Hall*, 2002 WL 413901, at *3.

**b.    Two Step Test**

Under the "two-step" test, a court considers certification in two phases. *See Mooney*, 54 F.3d at 1213-14. The court makes its first determination at a "notice stage." At this stage, a district court would decide whether a plaintiff has presented substantial, probative evidence that similarly-situated potential plaintiffs exist. *Id.* at 1213-14; *H & R Block*, 186 F.R.D. at 400. The plaintiff must "come forward with competent evidence suggesting that such class members exist." *H & R Block*, 186 F.R.D. at 400 (citing *Mooney*, 54 F.3d at 1213-14).

At the second stage, following a designated notice period for plaintiffs to opt in and additional discovery, the court makes a conclusive, factual determination on the "similarly situated" question. *Mooney*, 54 F.3d at 1214; *H & R Block*, 186 F.R.D. at 400. If the court determines that the class does not consist of similarly-situated persons and is erroneous, it will properly deny certification of the class and dismiss the plaintiff's class action claims. *Id.*

Several factors determine whether Plaintiff has made a sufficiently substantial showing for her allegations to survive the first step, the preliminary certification phase, of the two-step collective action certification analysis. Courts consider (1) whether similarly-situated plaintiffs were identified; (2) affidavits submitted; and (3) whether substantial evidence has been submitted of a widespread unlawful plan. *H & R Block*, 186 F.R.D. at 400; *Hall*, 2002 WL 413901, at *2.

Applying these factors to the instant case, it is clear that the collective action claims in this case fail and must be dismissed. Some of Plaintiff's prior briefing in this case indicated that she has no evidence of a widespread unlawful plan to violate the FLSA, (Dkt Entry No. 20 at 14), and her deposition testimony has borne that out. Plaintiff's testimony isolated the alleged FLSA violations to circumstances unique to her, occurring in the Mansfield store at the direction of her store manager, whom she testified "singled her out" and she didn't know why.



Plaintiff's testimony also established that in most of the stores where Plaintiff worked, there were none of the same problems with overtime pay that she contends she experienced with Ronnie Everage. Finally, Plaintiff's co-workers perceive the circumstances at the Mansfield store quite differently from Plaintiff, militating against the suitability of this case as a collective action.

### IV. <u>CONCLUSION</u>

For all of these reasons and pursuant to O'Reilly's concurrently filed Motion for Partial Summary Judgment, Defendant O'Reilly respectfully requests that the Court grant partial summary judgment against Plaintiff Anna Salinas, dismissing Plaintiff's collective action claims as unsustainable as a matter of law. Resolving this issue will permit resolution of O'Reilly's motion to transfer venue, Plaintiff's motion to strike affirmative defenses, and the narrowing and focus of the Rule 30(b)(6) deposition that Plaintiff seeks of O'Reilly.



Respectfully submitted,

BAKER BOTTS L.L.P.

By: _Teresa Valderrama by EGS w/ permission_
    Teresa S. Valderrama
    State Bar No. 20422500
    Kathryn S. Vaughn
    State Bar No. 00785144
    One Shell Plaza
    910 Louisiana
    Houston, Texas  77002
    Telephone:  (713) 229-1234
    Facsimile:  (713) 229-1522

OF COUNSEL:

Eric Senske
State Bar No. 18027100
BAKER BOTTS L.L.P.
2001 Ross Avenue
Dallas, TX 75201
(214) 753.6500 (Telephone)
(214) 753.6503 (Fax)

LUTTRELL & WILLIAMS, P.C.

By: _John M. Williams by EGS w/ permission_
    John M. Williams
    State Bar No. 21554200
    L. Don Luttrell
    State Bar No. 12708630
    3000 Weslayan, Suite 350
    Houston, Texas  77027
    Telephone:  (713) 877-1077
    Facsimile:  (713) 877-1089

ATTORNEYS FOR DEFENDANT
O'REILLY AUTOMOTIVE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent to the following counsel of record by certified mail, return receipt requested, and/or electronic mail this the 23 day of December 2004:

Brady Edwards
EDWARDS & GEORGE, L.L.P.
1000 Louisiana, Suite 1300
Houston, Texas 77002

Derek Braziel
EDWARDS & GEORGE, L.L.P.
208 N. Market Street, Suite 400
Dallas, Texas 75202

Richard J. (Rex) Burch
BRUCKNER BURCH PLLC
5847 San Felipe, Suite 3900
Houston, Texas 77057

Eric Senske